UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO, EASTERN DIVISION

ANDREW MITCHELL,
Plaintiff,

v.

DELAWARE COUNTY, OHIO,
Defendant.



JUDGE: JUDGE MARBLEY
MAGISTRATE JUDGE VASCURA
CASE NO: 2:26 CV 0144

# COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF (42 U.S.C. § 1983)

## I. PARTIES

1. Plaintiff Andrew Mitchell is a resident of Delaware County, Ohio.

2. Defendant Delaware County, Ohio ("the County") is a political subdivision of the State of Ohio and a "municipality" under 42 U.S.C. § 1983. At all relevant times, it was responsible for the policies, customs, practices, training, supervision, coordination, and oversight of its departments, agencies, officers, and instrumentalities, including but not limited to the Delaware County Child Support Enforcement Agency (CSEA), the Delaware County Sheriff's Office, the Delaware County Prosecutor's Office, the Delaware County Treasurer, and the Delaware County Auditor.

## II. JURISDICTION AND VENUE

3. This action arises under the Constitution and laws of the United States, including the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983.

4. This Court has original subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the events giving rise to these claims occurred in Delaware County, Ohio, which lies within this District.

## III. INTRODUCTION

6. This action challenges a County-wide system of governance that permits the coercive deprivation of liberty and property without constitutionally required notice or a meaningful opportunity to be heard, followed by an institutional refusal to correct known, glaring defects.

7. Plaintiff's injuries—spanning the justice system and the tax enforcement system—were not accidental or isolated. They are the predictable result of a deliberate County structure that fragments authority, disclaims responsibility, outsources core governmental functions, and ratifies unconstitutional outcomes.

8. County policymakers across multiple departments were repeatedly notified of specific procedural and constitutional violations and nonetheless allowed the unconstitutional systems to proceed unchanged, demonstrating a custom of deliberate indifference.

## IV. STATEMENT OF FACTS

9. Plaintiff is the father of two minor children with whom he exercises equal parenting time, including responsibility for school transportation.

10. At all relevant times in 2025 Plaintiff was actively enrolled in Ohio Medicaid.

11. Despite knowledge of plaintiffs indigency and available alternatives, the County's Child Support Enforcement Agency (CSEA) suspended Plaintiff's driver's license on February 28, 2025, without a prior hearing, without an ability-to-pay determination, and without any meaningful opportunity to be heard.

12. The suspension immediately and severely interfered with Plaintiff's ability to exercise parenting time and fulfill his parental obligations.

13. Plaintiff was subsequently charged with Driving Under Suspension (DUS) solely as a result of the suspension.

14. Amid parallel court proceedings and reliance on erroneous instructions from a court clerk, Plaintiff missed the March 14, 2025 initial arraignment for the Driving under Suspension. Plaintiff promptly sought a continuance and reconsideration, explaining the notice defect in writing; both requests were denied without a hearing.

15. On March 25, 2025, 11 days after the missed hearing, despite knowledge that Plaintiff's failure to appear was not willful, the Municipal Court issued an arrest warrant without providing Plaintiff any opportunity to cure the defect or be heard.

16. On April 8, 2025, Delaware County Sheriff's deputies executed the warrant at Plaintiff's residence. Without consent, probable cause of a threat, or exigent circumstances, deputies threatened to shoot Plaintiff's dog, forcibly kicked Plaintiff's door open, and pointed a loaded firearm into Plaintiff's home.

17. The deputies disengaged only after observing Plaintiff's security cameras and receiving supervisory instruction.

18. Subsequently, the Delaware County Sheriff reviewed and expressly ratified the deputies' conduct as compliant with County policy.

19. Plaintiff appeared for trial on the DUS charge prepared to contest the notice defect, the lack of willfulness, and the constitutional validity of the underlying license suspension.

(Statement of facts continued)

20. On the trial date, the prosecuting authority—an agent of the Delaware City Prosecutor's Office, which operates under the coordination and oversight of Defendant Delaware County—moved to dismiss the charge

21. The case was dismissed without any adjudication of guilt, without any finding regarding notice or willfulness, and without any judicial review of the constitutionality of the license suspension.

22. After the dismissal, the Chief Prosecutor admitted in writing that the dismissal resulted from the State's inability to proceed, while separately asserting that Plaintiff was "still suspended," that Plaintiff "got lucky," and that Plaintiff's evidence did not render him "not guilty," despite the absence of any merits determination.

23. At no time before, during, or after the DUS prosecution did any court conduct a hearing or make findings regarding notice, willfulness, or Plaintiff's ability to pay, even though Plaintiff repeatedly raised these constitutional defects.

24. On July 10th plaintiff contacted City council for a second time specifically pointing out that his case was settled and that he was not seeking an appeal or an attorney that he was contacting them because they were listed as the liaison for the courts on Delaware county's website.

25. On July 14th council responded with this statement "Thank you for reaching out to us. I understand your frustration with the situation. City Council has no authority over the operations of the court, and its decision making progress. I suggest you consider hiring an attorney to represent you in this matter. I hope you are able to get matters resolved satisfactorily.

26. In parallel Defendant Delaware County maintains a revenue-generating tax lien sales program that operates on identical principles: imposing severe penalties based on defective or shifting notice, followed by an institutional refusal to audit, review, or correct errors.

27. On or about November 29, 2024, the Delaware County Treasurer mailed Plaintiff a "DELINQUENT TAX NOTICE" informing plaintiff that a tax lien for $2221.59 would be sold against his property if he did not pay the amount by December 30th 2024.

28. The notice stated a tax lien sale would occur on December 31, 2024, if the delinquency was not resolved.

(Statement of facts continued)

29.  On December 31, 2024, the County sold a tax lien certificate on Plaintiff's property for $4,429.82** and was sold to a private, third-party speculator, NAR Ohio, LLC, for a "Certificate purchase price" of **$4,729.82—more than double the amount specified in the official notice sent just one month prior.

30.  Notably, the official tax certificate was prepared not by the County Treasurer, but by the private purchaser itself, NAR Ohio, LLC, indicating a profound abdication of governmental oversight and an improper outsourcing of a core sovereign function.

31. Confused by the drastic and unexplained discrepancy between the notice ($2,221.59) and the sold lien amount ($4,729.82), Plaintiff contacted County treasurer on April 30th 2025. The Treasurer's office repeatedly referred Plaintiff to the private purchaser, NAR Ohio, LLC, rather than providing an official accounting or accepting responsibility for the accuracy of its own lien.

32. Seeking oversight, Plaintiff then made a formal written request for review to the Delaware County Auditor, George Kaitsa and asked for a copy of his tax ledger for the last 10 years.

33. In a written email response dated December 23, 2025 at 2:16pm , Auditor Kaitsa refused to review the lien's accuracy and for a second time ignored plaintiffs requests for his 10 year tax ledger.

34. On January 14th 2026 plaintiff sent out an email which included recipients; Aric Hockstetler (General counsel to the commissioners and Deputy administrator) The Delaware County Treasurers office, The Delaware county Prosecutors office, Each commissioner individually. Pointing out multiple issues and lack of oversight in multiple agencies throughout the county including but not limited to the child support enforcement agency the Delaware county sheriff Delaware county treasurer Delaware county auditor.

35. On January 14th 2026 deputy administrator and general counsel for the commissioners responded that the commissioners do not have general oversight over county agencies. If plaintiff had a problem with one of the agencies he's making complaint with that agency. General counsel specifically stated that the commissioners do not police supervise or have general oversight over county agencies in his response email.

36.  On January 23rd 2026 Commissioner Barb Lewis responded to plaintiff's email stating the same thing to the commissioners do not have general oversight over county agencies. Commissioner specifically stated that they only have very specific oversight authority over county agencies regarding investments only denying any responsibility for county agencies violating federal or state law.

(Statement of facts continued)

37. This pattern—imposing severe penalties based on grossly inaccurate and misleading notice, then systematically refusing all avenues for correction or review—exemplifies Defendant's county-wide custom. It demonstrates that the constitutional violations Plaintiff suffered are not isolated, but are manifestations of a unified, dysfunctional approach to governance. As a direct result of the unconstitutional tax lien sale, Plaintiff has lost his statutory right of redemption. The private lienholder may now initiate foreclosure to seize his property at any time. Plaintiff thus faces an immediate, concrete threat of permanent property deprivation—an ongoing harm stemming directly from the County's unconstitutional process.

38. Defendant County maintained and enforced a County-wide custom, practice, and policy of initiating coercive enforcement actions—including the suspension of driver's licenses and the sale of tax liens—without constitutionally adequate notice or a prior hearing, followed by an institutional refusal to correct known defects after formal notice.

39. Defendant further maintained a policy of fragmented authority and abdication of responsibility, whereby its departments and agencies—including the CSEA, the Sheriff's Office, the Prosecutor's Office, the Treasurer, and the Auditor—disclaimed responsibility for correcting constitutional violations while continuing to rely on their consequences, often deferring to or outsourcing core functions to private third parties.

40. High-level County officials, including the Sheriff and the Chief Prosecutor, engaged in and ratified unconstitutional conduct, demonstrating the widespread and persistent customs that the Board of Commissioners, as final policymakers, knowingly refused to oversee or correct.

41. Defendant's customs and policies are manifested across multiple, separate departments of County government, demonstrating they are widespread, persistent, and constitute the official policy of Delaware County. They are not isolated failures but the predictable result of a deliberate and integrated approach to governance.

42. Defendant's policies and customs, as described above, were the moving force behind the direct and proximate causation of Plaintiff's constitutional injuries.

43. At every stage, Plaintiff sought review and correction of clear factual and procedural defects through ordinary governmental channels. In response, each County entity involved—including administrative agencies and officials whose actions were relied upon by the courts—disclaimed authority or responsibility to review, correct, or halt the challenged actions. As a result, Plaintiff was left without any meaningful process by which to contest or remedy ongoing deprivations of liberty and property.

## V. CLAIMS FOR RELIEF

### COUNT I: DEPRIVATION OF PROCEDURAL DUE PROCESS (42 U.S.C. § 1983)

44. Plaintiff realleges and incorporates by reference Paragraphs 1 through 43 as if fully set forth herein.

45. Defendant, acting under color of state law and pursuant to its official customs and policies, deprived Plaintiff of his liberty and property interests without due process of law. This includes, but is not limited to, the suspension of his driver's license and the imposition of a fraudulent tax lien without proper notice and a meaningful opportunity to be heard, and the subsequent refusal to provide any corrective process.

46. These actions violated Plaintiff's rights under the Fourteenth Amendment to the United States Constitution.

47. As a direct and proximate result of these violations, Plaintiff has suffered damages including loss of liberty, loss of parenting time, emotional distress, cloud on his property title, and other injuries.

### COUNT II: UNREASONABLE SEIZURE AND EXCESSIVE FORCE (42 U.S.C. § 1983)

48. Plaintiff realleges and incorporates by reference Paragraphs 1 through 47 as if fully set forth herein.

49. Defendant, acting under color of state law and pursuant to its official customs and policies, subjected Plaintiff to an unreasonable and violent seizure. County deputies executed a warrant for a minor traffic offense by pointing firearms into his home and threatening lethal force against his pet without justification, consent, or exigency.

50. These actions violated Plaintiff's rights under the Fourth Amendment to the United States Constitution.

51. As a direct and proximate result of these violations, Plaintiff has suffered severe emotional distress, trauma, and a violation of the sanctity of his home.

(Claims for relief continued)

## COUNT III: MUNICIPAL LIABILITY UNDER MONELL (42 U.S.C. § 1983)

52. Plaintiff realleges and incorporates by reference Paragraphs 1 through 51 as if fully set forth herein.

53. The constitutional violations alleged in Counts I and II were directly caused by an official policy, custom, or practice of Defendant Delaware County, established by its final policymakers, the Delaware County Board of Commissioners.

54. The Board of County Commissioners possesses final policymaking authority for Delaware County, including broad statutory authority over the County's budget, administration, and the coordination of its agencies to ensure lawful operation.

55. Despite this authority and receiving specific, detailed notice of the systemic constitutional violations plaguing its agencies (including defective license suspensions, violent warrant executions, fraudulent tax liens, and a refusal to comply with public records laws), the Board of Commissioners adopted and maintained an official policy of deliberate indifference: a refusal to exercise any oversight, to coordinate a corrective response, or to halt the unconstitutional practices.

56. This official policy of inaction and abdication was the "moving force" behind the violations of Plaintiff's constitutional rights. It ensured that no mechanism for redress existed within County government, ratifying the misconduct of its subordinate agencies.

57. Defendant Delaware County is therefore directly liable under Monell v. Department of Social Services, 436 U.S. 658 (1978).

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Andrew Mitchell respectfully requests that this Court enter judgment in his favor and against Defendant Delaware County, Ohio, and grant the following relief:

58. A declaratory judgment that Defendant's customs, policies, and practices, as described herein, violate the Fourth and Fourteenth Amendments to the United States Constitution;

59. A preliminary and permanent injunction ordering Defendant to:

   a. Reform its tax lien sale process to provide constitutionally adequate notice and a meaningful opportunity to be heard, which shall include, at a minimum, compliance with the notice and hearing provisions of Ohio Revised Code Chapter 5721.

   b. Establish and enforce a county-wide mechanism to promptly review and correct alleged errors in its enforcement actions;

60. Compensatory damages in an amount to be determined at trial for all losses, injuries, and emotional distress suffered;

61. Reasonable attorneys' fees, litigation expenses, and costs pursuant to 42 U.S.C. § 1988; and Such other and further relief as the Court deems just and proper.

## VII. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,
Andrew Mitchell
Pro Se
/s/Andrew Mitchell
390 West Williams Street
Delaware, Ohio
43015

*Andrew Mitchell*
2/5/2026

## DECLARATION UNDER PENALTY OF PERJURY

I, Andrew Mitchell, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am the Plaintiff in the above-captioned action.
2. I have read the foregoing Complaint for Declaratory, Injunctive, and Monetary Relief.
3. The facts stated therein are true and correct to the best of my knowledge, information, and belief.

Executed on this 5th day of February, 2026.


Andrew Mitchell, Plaintiff Pro Se

*Andrew Mitchell*

02/05/2026